## HONORA E. MADDEN'S CASE.

Worcester.    October 5, 1915. — February 7, 1916.

Present: RUGG, C. J., LORING, DE COURCY, PIERCE, & CARROLL, JJ.

*Workmen's Compensation Act.    Constitutional Law.    Words, "Personal injury."*

The workmen's compensation act contained in St. 1911, c. 751, as amended by St. 1912, c. 571, providing compensation for a personal injury to an employee arising out of and in the course of his employment, does not confine such compensation to injuries incurred by accident.    Following *Hurle's Case,* 217 Mass. 223, and *Johnson's Case,* 217 Mass. 388.

Where a pre-existing heart disease of an employee is accelerated to the point of disablement by the exertion and strain of his employment, there can be found to have been a personal injury arising out of and in the course of his employment within the meaning of the workmen's compensation act.    Following *Brightman's Case,* 220 Mass. 17.

A woman employed in a carpet factory operated by a subscriber under the workmen's compensation act, who had "a weak heart condition" before her injury and before she entered the employ of the subscriber, and who, when in the course of her work she was pulling a carpet along and over a table in front of her, "felt something give" and, thinking the trouble would pass away, continued to work until dinner time, and after dinner "started to work again; then she felt something else give way," and then was taken to a hospital where she suffered an attack of angina pectoris, and thereafter was disabled from working, can be found to have received a personal injury arising out of and in the course of her employment within the meaning of St. 1911, c. 751, Part II, § 1.

The workmen's compensation act contained in St. 1911, c. 751, as amended by St. 1912, c. 571, which leaves it wholly to the option of the employer and of the employee as to whether they respectively will come under its provisions or will stand on their legal rights outside it, is not unconstitutional as depriving the employer of property without due process of law or for any other reason.

RUGG, C. J.    Honora E. Madden was an employee of a carpet company, which was a subscriber under the workmen's compensation act, St. 1911, c. 751.    The Industrial Accident Board found that, while engaged in the performance of the work for which she was hired, she "received a personal injury arising out of . . . her employment, . . . aggravating and accelerating a weak heart condition to the point of total incapacity for work."    This finding, standing alone, might be considered indecisive.    It simply is a

categorical repetition of the words in the statute by which the result is reached entitling the employee to compensation, without a statement of what the personal injury was out of which grows the right to money payments. But, as the Industrial Accident Board "affirms and adopts the findings and decision of the committee of arbitration," resort may be had to the proceedings of that committee and the evidence there reported for the foundation of its conclusions. After reciting the substance of the evidence, most of which was uncontroverted except that from physicians, the finding of the arbitration committee was that "the work Mrs. Madden was doing on the day on which the injury was received so aggravated and accelerated a weak heart condition as to incapacitate her for work, and that she received a personal injury arising out of and in the course of her employment," whereby she was incapacitated. The personal injury and the circumstances under which it was received are set out in the evidence.

A finding was warranted that she had "a weak heart condition" before her injury and before she entered the service of the subscriber. Her work for it was to repair bad spots in the weaving on rolls of carpet. The roll was placed on some device nearby, and she pulled the carpet along and over a table in front of her. Her own description was that "her work was more pulling [that is "dragging the carpet along over the table"] than sewing . . . the carpet was brought to them in a roll and a bar was put through this roll and two girls had to lift it; they undid the carpet on that roll, turned the back over and had to pull it, then they had to turn the face of it over and it was taken to the shears — they had to pull it to them; they dragged them on the floor; there were some carpets that had to be put on the table, but not all of them . . . she had not been sewing all morning on the day of the alleged injury — there is not as much sewing to do as pulling . . . she never had any attack before this one." Her description of the "personal injury" (Part II, § 1) on which the claim is founded, was this: "She went to work on the morning of July 10, as she had every morning, and worked up to the time she was taken with the pain — that was about 11.40 o'clock; she was pulling carpets at the time she felt something give — she thought it would pass away . . . she continued to work until it was time to wash up — she heated her tea . . . and sat down to eat her dinner — she could not eat,

so she . . . started to work again; then she felt something else give way," and she was taken to the hospital. Other witnesses testified that the employee exclaimed that she "had an awful pain under her heart" and that she placed some ice over her heart. It might have been inferred from this and other evidence that she suffered an attack of "angina pectoris," which has been defined as a "peculiarly painful disease . . . usually associated with organic change of the heart." There was, also, medical testimony to the effect that "hard, laborious work would produce a heart lesion; if there were any previous heart trouble, it would accelerate it." The question is, whether reasonable men could draw an inference that this was a personal injury received by the employee arising out of her employment. We are not concerned with the inquiry whether there are other inferences, or whether this is the most reasonable one.

Rational minded persons endeavoring to get at the truth might have found upon this evidence, with the deductions reasonably to be drawn from it, that the employee, being under some degree of disability due to a weak heart, suffered by reason of the exertion in pulling the carpet, as required by her contract of service, a further acute impairment of the strength of the heart, whereby it was disabled from performing its normal functions as it had done theretofore. This was a damage to a physical organ. It was a definite and specific detriment to the physiological structure of her body.

The standard established in this respect by our workmen's compensation act as the ground for compensation is simply the receiving of "personal injury arising out of and in the course of" the employment. This standard is materially different from that of the English act and of the acts of some of the States of this nation. That standard is "personal injury by accident," both in the act of 1897 and 1906. See Sts. 60 & 61 Vict. c. 37, § 1 (1); 6 Edw. VII, c. 58, § 1 (1).

The difference between the phraseology of our act and the English act in this respect cannot be regarded as immaterial or casual. The English act in its present form was passed several years before ours. It was known to the Legislature which enacted our statute and was followed as to its general frame and in many important particulars. *Gould's Case*, 215 Mass. 480, 486. *McNicol's Case*,

215 Mass. 497, 499. Indeed, "The language of the English act of 1897 was followed whenever possible." See Report of Massachusetts Commission on Compensation for Industrial Accidents, 1912, page 46. This difference must be treated as the result of deliberate design by the General Court after intelligent understanding of the limitation expressed by the words of the English act. The freer and more comprehensive words in our act must be given their natural construction with whatever added force may come from the intentional contrast in phraseology with the English act. The "personal injury by accident," which by the English act is made the prerequisite for the award of financial relief, is narrower in its scope than the simple "personal injury" of our act. As was said in *Fenton v. J. Thorley & Co. Ltd.* [1903] A. C. 443, at page 448, "The words 'by accident' are . . . introduced parenthetically as it were to qualify the word 'injury,' confining it to a certain class of injuries, and excluding other classes, as, for instance, injuries by disease or injuries self inflicted by design." To the element of "personal injury" the further condition is added, that it must have been received as "an unlooked for mishap or an untoward event which is not expected or designed," and to this have been appended the words "by the workman himself" in *Trim Joint District School Board v. Kelly,* [1914] A. C. 667, 679, whereby injuries "designed" by persons other than the workmen are included within that act. An illustration of the difference between "personal injury" and "personal injury by accident" put by Lord Reading, the present Chief Justice of England, in the case last cited, at page 720, is apposite in this connection: "For example, if a workman became blind in consequence of an explosion at the factory, that would constitute an injury by accident; but if in consequence of the nature of his employment his sight was gradually impaired and eventually he became blind, that would be an injury, but not an injury by accident."

The wide divergence between a simple "personal injury," the standard of our act, and the "personal injury by accident" of the English and other acts is exemplified further by reference to some of the decisions. It was held in *Steel v. Cammell, Laird & Co. Ltd.* [1905] 2 K. B. 232, that lead poisoning resulting from a gradual accumulation of the poison in handling lead, in *Broderick v. Lon-*

*don County Council,* [1908] 2 K. B. 807, that enteritis from inhaling sewer gas in the course of the employment, and in *Eke v. Hart-Dyke,* [1910] 2 K. B. 677, that ptomaine poisoning from clearing out cesspools, were not within the act. As we understand those judgments, each one rests on the ground that there was a "personal injury," but that it was not "by accident," and hence there could be no recovery. If the words "by accident" had been omitted from the English act, the inference seems irresistible from the chain of reasoning adopted in each of these judgments that a different judicial result would have been reached. That a different result seems to us inevitable is manifest from the course of reasoning and the conclusion in *Hurle's Case,* 217 Mass. 223, and *Johnson's Case,* 217 Mass. 388. In any event, decisions made as to workmen's compensation acts which base compensation upon "personal injury by accident" instead of upon "personal injury" well may be and may be expected to be divergent from our own and compensation be denied under them which would be awarded under ours. See *Liondale Bleach Works v. Riker,* 56 Vroom, 426, and *Adams v. Acme White Lead & Color Works,* 182 Mich. 157. Although the Ohio act in this respect is similar to ours, the history and terms of the Ohio constitutional amendment touching the subject, and of the governing statute and construction placed upon it by the administrative board, led to an interpretation of intent to restrict the operation of that act to personal injuries by accident by a chain of reasoning which has no relevancy to our act. *Industrial Commission of Ohio v. Brown,* 92 Ohio St. 309. If there is anything in any of the three decisions last cited inconsistent with our conclusion, we are constrained not to follow them.

Actions for personal injury arising from disease contracted in the course of employment and without physical impact are not uncommon where the other elements exist to establish liability. *Thompson v. United Laboratories,* 221 Mass. 276. *Cox v. American Agricultural Chemical Co.* 24 R. I. 503. *Wagner v. Jayne Chemical Co.* 147 Penn. St. 475. *Fox v. Peninsular White Lead & Color Works,* 84 Mich. 676, 682. That they have not been more frequent, perhaps has been due to the fact that such dangers usually are well known and are assumed by the contract of employment, or are not matters about which a duty has been owed by the employer.

"Personal injury" is materially broader in its scope than is

"personal injury by accident." "Personal injury" standing by itself comprehends a wide range of physical harm. Indeed, the phrase has been extended in other connections to comprise a large category of mischiefs which have a theoretical rather than corporeal adjunction to the human body, and which may be intangible or mental rather than tactile and physical. It may comprehend damage to those inherent personal rights which generally are recognized as protected by the law and as sacred as the security from bodily violence. Doubtless many decisions include among personal injuries wrongs which would not be personal injuries under the workmen's compensation act. For example, the phrase "personal injury" has been held to include even injuries to reputation resulting from libel, *Thompson* v. *Judy*, 95 C. C. A. 51, 54, malicious prosecution and false imprisonment, *McChristal* v. *Clisbee*, 190 Mass. 120, invasion of the right to privacy, *Riddle* v. *MacFadden*, 201 N. Y. 215, as well as the alienation of affection of a husband or wife, seduction, false arrest and kindred tortious acts. That was pointed out in *Hurle's Case*, 217 Mass. 223, after a considerable review of the authorities. It there was expressly held that a disease of the eyes directly induced by inhalation of poisonous gases in the course of the employment might be found to be a "personal injury arising out of" the employment. To the same effect in substance is *Johnson's Case*, 217 Mass. 388. These cases hold that it is not necessary to "personal injury" that there be a physical impact. That was adjudged also, with a full review of the English decisions, in *Coyle* v. *John Watson, Ltd.* [1915] A. C. 1, 12–14. Even liability for personal injury arising out of tort is not always restricted to cases of physical impact. This was shown by Chief Justice Knowlton in *Mulvey* v. *Boston*, 197 Mass. 178, 180. See *Megathlin* v. *Boston Elevated Railway*, 220 Mass. 558. There is nothing at variance with this in *Spade* v. *Lynn & Boston Railroad*, 168 Mass. 285; S. C. 172 Mass. 488, which was an action for negligence and where, on the facts presented, it was held that there could be no recovery for mental disturbance without physical injury. In other connections "damage to the person" has a more constricted signification, which excludes indirect and consequential injury ensuing from immediate bodily harm to another. See, for example, *Dixon* v. *Amerman*, 181 Mass. 430; *Hey* v. *Prime*, 197 Mass. 474; *Keating*

v. *Boston Elevated Railway*, 209 Mass. 278, 282. These and like decisions do not affect the case at bar.

Varying facts may give rise to questions of difficulty. In this connection it is to be noted that there is no explicit provision for compensation for occupational disease as such. "Personal injury" is the only ground for compensation. The legislative principle declared by the workmen's compensation act, to the test of which all cases arising under it must be subjected, is that whatever rightly is describable as a "personal injury," if received "in the course of" and "arising out of" the employment, becomes the basis for a claim.

If the harm suffered by the employee in the case at bar had been received as the result of physical endeavor or strain in striving to resist tortious conduct by the employer, or in merely being subjected to such conduct, there would be little doubt that recovery could be had in an action at law as for a "personal injury" in the common law sense of those words. *Coleman* v. *New York & New Haven Railroad*, 106 Mass. 160, 178. *Larson* v. *Boston Elevated Railway*, 212 Mass. 262 and cases collected. *Wiemert* v. *Boston Elevated Railway*, 216 Mass. 598.

Without undertaking to define "personal injury" or to go beyond the requirements of the facts here presented, it is enough to say that the occurrence described by the dependent when she said "she felt something give" and "felt something else give way," accompanied by the symptoms of angina pectoris, may have been found to be a "personal injury."

That injury also may have been found to have arisen out of the employment. The pulling of the carpet, although not requiring such putting forth of muscular power as would have affected a healthy person, yet may have been enough to cause the injury which the employee suffered. It could have been regarded as resulting from the work as a contributing proximate cause. *McNicol's Case*, 215 Mass. 497, 499. *Brightman's Case*, 220 Mass. 17. *Fisher's Case*, 220 Mass. 581.

Even under the English act it seems that a personal injury such as that here disclosed would be held to have arisen "by accident" and hence to be within that act. It has been decided that perforation of a diseased intestine by slight pressure such as would be harmless to a healthy person, *Woods* v. *Wilson, Sons &*

*Co. Ltd.* 84 L. J. K. B. 1067, (House of Lords,) the breaking of an aneurism by normal activity of the workman, *Clover, Clayton & Co. Ltd.* v. *Hughes,* [1910] A. C. 242, rupture resulting from ordinary exertion, *Fenton* v. *J. Thorley & Co. Ltd.* [1903] A. C. 443, and pneumonia induced by exposure, *Coyle* v. *John Watson, Ltd.* [1915] A. C. 1, were "personal injuries by accident." None of these instances come within the occupational diseases described in the Third Schedule of St. 6 Edw. VII, c. 58, and hence these decisions are quite pertinent as persuasive authorities in a case like the present.

It has been argued with force on behalf of the insurer that since the harm to the employee was not wholly the effect of the work but came in large part from the previous weakened condition of the employee's heart, hence, either there can be no award of compensation, or it should be restricted to that part of the injury which resulted directly from the work, and the part of the injury which flowed from the previous condition should be excluded. Even though the premise be sound, the conclusion does not follow. The act makes no provision for any such analysis or apportionment. It protects the "employee." That word is defined in Part V, § 2, as including "every person in the service of another under any contract of hire," with exceptions not here pertinent. There is nothing said about the protection being confined to the healthy employee. The previous condition of health is of no consequence in determining the amount of relief to be afforded. It has no more to do with it than his lack of ordinary care or the employer's freedom from simple negligence. It is a most material circumstance to be considered and weighed in ascertaining whether the injury resulted from the work or from disease. It is the injury arising out of the employment and not out of disease of the employee for which compensation is to be made. Yet it is the hazard of the employment acting upon the particular employee in his condition of health and not what that hazard would be if acting upon a healthy employee or upon the average employee. The act makes no distinction between wise or foolish, skilled or inexperienced, healthy or diseased employees. All who rightly are describable as employees come within the act.

The act is not a substitute for disability or old age pensions. It cannot be strained to include that kind of relief. Its ultimate purpose simply is to treat the cost of personal injuries incidental

to the employment as a part of the cost of the business. It does not afford compensation for injuries or misfortunes, which merely are contemporaneous or coincident with the employment, or collateral to it. Not every diseased person suffering a misfortune while at work for a subscriber is entitled to compensation. The relief is so new that the tendency may be to inquire only as to the employment and the injury and to assume that these two factors constitute ground for compensation. But the essential connecting link of direct causal connection between the personal injury and the employment must be established before the act becomes operative. The personal injury must be the result of the employment and flow from it as the inducing proximate cause. The rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment and not by some other agency, or there can be no recovery. In passing upon this question, an humanitarian emotion ought not to take the place of sound judgment in the weighing of evidence. The direct connection between the personal injury as a result and the employment as its proximate cause must be proved by facts before the right to compensation springs into being. A high degree of discrimination must be exercised to determine whether the real cause of an injury is disease or the hazard of the employment. A disease, which under any rational work is likely to progress so as finally to disable the employee, does not become a "personal injury" under the act merely because it reaches the point of disablement while work for a subscriber is being pursued. It is only when there is a direct causal connection between the exertion of the employment and the injury that an award of compensation can be made. The substantial question is whether the diseased condition was the cause, or whether the employment was a proximate contributing cause. In the former case, no award can be made; in the latter, it ought to be made. This in substance is the test stated in *McNicol's Case*, 215 Mass. 497, 499. It must be applied here, as in other cases. In this respect the same rule governs as under the English act, where acceleration of a diseased bodily condition to the point where it constitutes a personal injury by reason of the strain or exertion of the employment, is ground for recovery. See *Clover, Clayton & Co. Ltd.* v. *Hughes*, [1910] A. C. 242, 243, and like cases cited above.

This point is governed by *Brightman's Case*, 220 Mass. 17. The insurer asks us to review *Brightman's Case* and especially the sentence at page 20, where it is said, "Acceleration of previously existing heart disease to a mortal end sooner than otherwise it would have come is an injury within the meaning of the workmen's compensation act." Of course that sentence was applied in its context to an acceleration directly traceable to the employment as the cause. It expressed the deliberate and matured judgment of the court. There is not thereby imported into the workmen's compensation act any theory of the law founded upon wrongdoing of the employer. It is plain and has been said repeatedly that the act eliminates all consideration of tort, penalty or negligence, save where there has been "serious and wilful misconduct." It establishes a unique theory of distribution of the human loss directly arising out of commercial and industrial enterprises hitherto unknown to our law. When a pre-existing heart disease of the employee is accelerated to the point of disablement by the exertion and strain of the employment, not due to the character of the disease acting alone or progressing as it would in any rational work, there may be found to have been a personal injury.

It is contended that, since the act contemplates a kind of accident insurance as the means of affording relief to the employee, it cannot have been the intent of the Legislature to include such risks as that here disclosed, because of the difficulty of fixing a rate of insurance. But there does not appear as matter of law to be any insuperable difficulty in this respect. Fortuitous events, which appear to be as difficult of forecast as this, are common subjects of insurance.

It is argued that grave economic consequences of far reaching effect may follow from the act as thus construed. It is said that persons not in good health may be altogether excluded from employment to their severe hardship, while the cost of conducting commercial and industrial enterprises may become prohibitively large, all to the detriment of the general welfare and of the financial resources of the Commonwealth. These considerations are of great public moment. But these factors relate to legislative questions and the arguments founded on them are distinctly legislative arguments. They may be entitled to attention and

deliberation at the hands of the legislative department of the government. In the present forum they cannot have decisive significance, even if it were plain that the enumerated consequences were inevitable. The function of the judicial department of the government is simply to determine whether an act is within the power vested by the Constitution in the Legislature, and then to enforce it according to its true meaning in cases as they arise. While the consequences to which a particular construction or application of a statute would lead have an important bearing in determining what may have been the intent of the Legislature in using words of doubtful import, *Greene* v. *Greene*, 2 Gray, 361, 364, they cannot control a plain rule of positive law established by clear language in a legislative mandate. The words "personal injury" had meaning in the law before the passage of the workmen's compensation act sufficiently well defined clearly to include the kind of personal harm here disclosed, so that it hardly can be assumed under all the circumstances that the Legislature used them in a different or unusually constricted sense.

There are no conditions which warrant a judicial interpretation of the words "personal injury" in the act as meaning the same as "personal injury by accident" or as excluding from the scope of "personal injuries" those instances where a diseased physical condition may have invited, or rendered the employee unusually susceptible to, "personal injury." It may be that the Legislature intended a more narrow field than actually was described by the words used. But if that be so, the remedy must be sought from the Legislature. There are no means by which the court can ascertain "the purpose and effect of a statute except from the words used when given their common and approved meaning." *Bergeron, petitioner*, 220 Mass. 472, 475.

The constitutionality of the act as thus interpreted is assailed. It is urged that the employer is compelled to part with property for causes for which he is in no wise responsible, and that thus he is deprived of property without due process of law. In its essence that is an attack upon the act as a whole, for in none of its ordinary aspects does the payment required by the act depend upon fault, and it may be required in many cases where the employer was wholly free from fault. In support of this attack,

cases like *Camp* v. *Rogers*, 44 Conn. 291, *Daugherty* v. *Thomas*, 174 Mich. 371, *Ohio & Mississippi Railway* v. *Lackey*, 78 Ill. 55, *Commonwealth* v. *Herr*, 229 Penn. St. 132, and *Eastman* v. *Jennings-McRae Logging Co.* 69 Ore. 1, are relied upon where statutes have been stricken down which have undertaken to make one liable in an action at law for injuries, losses or expenses for which he was in no way responsible directly or remotely, morally or legally. The case at bar is quite distinguishable. The workmen's compensation act is elective and not compulsory. It is wholly optional with the employer, as it is with the employee, whether he comes under the provisions of the act or stays outside and stands on his legal rights. The connection between the employment and the injury in the case at bar is the same in kind as in the manifold other instances where the personal injury to the employee is caused by a definite physical blow wholly without fault of the employer. The act is not unconstitutional in this respect. *Opinion of the Justices*, 209 Mass. 607. *Young* v. *Duncan*, 218 Mass. 346, 351.

The reasons which have been set forth in this opinion and in the cases to which reference has been made seem to us to compel the conclusion that on the evidence here disclosed it was competent for the Industrial Accident Board to find that the employee had received a "personal injury arising out of and in the course of" her "employment," according to the true meaning of those words in the workmen's compensation act.

*Decree* * *affirmed.*

*F. F. Dresser*, for the insurer.
*J. C. Mahoney*, for the employee.

---

* Made in the Superior Court by *O'Connell, J.*