176 So.2d 39

**TIGER MOTOR COMPANY, Inc.**

**v.**

**Audrey C. WINSLETT.**

**5 Div. 802.**

Supreme Court of Alabama.

May 27, 1965.

**110**

·Brown & McMillan, Opelika and Auburn, for appellant.

Walker & Hill, Opelika, for appellee.

PER CURIAM.

This is a workmen's compensation case (Code 1940, Tit. 26, § 253 et seq., as amended) brought here by certiorari on petition of the defendant below to review a judgment of the circuit court of Lee County awarding compensation to the employee.

Under the provisions of Title 26, § 262, Code 1940, "injuries by an accident arising out of and in the course of his employment" do not include "an injury caused by the act of a third person or fellow employee intended to injure the employee because of reasons personal to him, and not directed against him as an employee, or because of his employment * * *."

The only controverted question in the instant case is whether the injuries suffered by plaintiff (Winslett)—wounds inflicted upon him by one A. C. Eason in the course of an assault and battery made by Eason with his fists on plaintiff, as shown by the findings of the trial court—arose out of plaintiff's employment, within the restrictive definition of § 262(j), as quoted above, and construed in connection with the legal meaning of § 253, Tit. 26, Code of 1940. Jett v. Turner, 215 Ala. 352, 110 So. 702(1) (2).

From the finding of facts made by the trial court, it appears that the plaintiff (Winslett) was employed by defendant, Tiger Motor Company, Inc., as a mechanic on September 19th and 20th, 1963, under agreement whereby "he was paid 55% of one-half of the scheduled job price for servicing and repairing automobiles, published by the manufacturer and used by the defendant, being paid on Saturdays on pay

rolls made on Fridays from preliminary or tentative pay rolls submitted late on Thursdays"; that "plaintiff maintained his own stubs or 'hard board' records of the work he did"; that "A. C. Eason was service manager for defendant"; that "on Thursday afternoon September 19, 1963 there was a 'come back' 'transmission job' worked earlier that week by plaintiff, to be reworked; that when the preliminary or tentative pay roll sheet for that week was submitted to Mr. Winslett and he checked it against his stubs the 'come back' 'transmission job' was marked through; that plaintiff was dissatisfied with pay accorded him for a 'ring' or 'motor' job he had worked; plaintiff went to Eason and complained about the pay accorded him on the 'ring job' and Eason told plaintiff that the pay accorded for the 'ring job' was correct under the schedule of pay and he could approve no more but if Mr. Gunter, defendant's president and general manager, would pay him more it would be all right with Eason; that plaintiff admits the pay accorded for the 'ring job' was correct; that plaintiff told Eason that he would not work that cheap and would quit and come back the next day and get his tools; that thereupon Eason asked plaintiff what he was going to do about the 'come back' 'transmission job', and plaintiff said he would come back the next morning and work it; that plaintiff came back Friday, September 20, 1963, pulled the 'transmission job' automobile into his work stall, and got another employee, Ogletree, to help him take the transmission out and place it on his work bench; that without doing any work on the transmission, he left the defendant's place of business, and returned thereto between 10:30 and 11:30 that morning."

That "the evidence of the relevent (sic) material events subsequent to plaintiff's return to and including an altercation with Eason, within the hour, is in utter conflict or contradiction. Plaintiff's version is that on him (sic) so returning, he went into the front and obtained the pay roll sheet from Mr. Cecil Ward, and saw that the transmission job was still marked through," that "he returned to the service shop to see Eason, who was not in, and plaintiff returned to his work bench and started working on the transmission job again; that in 15 to 20 minutes Eason returned and plaintiff went to Eason at his desk and asked if Eason had marked the job off his pay roll sheet; that Eason said he had; that plaintiff said to Eason that 'Since you done that you just pay me for pulling the transmission and disassembling it and I'll take my tools and go home'; that Eason, using a curse word, said he was not going to pay him anything; that plaintiff said, using a vulgar designation of himself, that he was not going to work for nothing; that plaintiff turned to go see Mr. Gunter, defendant's president, and Eason grabbed plaintiff and hit plaintiff on the forehead, with his fist, knocking plaintiff to the floor, and getting on plaintiff and hitting him some more; that plaintiff fell on his back and the rear pressure point of a spring metal hernia truss he was wearing injured his backbone. * * * At some point of his testimony on cross-examination, plaintiff admitted he had said he did not like Eason, and Eason did not like him, and that there was 'bad blood' between them.

That "Defendant's version of the altercation, testified by Eason, is that when plaintiff came to Eason's desk at the time and place of the altercation, plaintiff with a curse word and criticism accused him of holding out pay on the transmission job and with threat of violence, by vulgar words and acts demanded pay now, and Eason told plaintiff he would get pay when he got through with the job, and that plaintiff then called Eason a —— liar, and Eason hit plaintiff, knocking him down, got down and continued to hit plaintiff several times."

The court concluded that the plaintiff and defendant were subject to Workmen's Compensation Laws of Alabama, and that "the plaintiff at the time of his injury suffered an accidental injury which arose out of and in the course of his employment," and

awarded compensation to the plaintiff in an amount that is not challenged by this review. Defendant does contend by assignment of error that the trial court erred in finding as a matter of law that the injury suffered by plaintiff, Winslett, and inflicted by Eason, an employee of Tiger Motor Company, Inc., was an accident arising out of and in the course of plaintiff's employment.

The trial court further observed in its opinion, consonant with the decisions of this court, "That the Workmen's Compensation Laws are special and remedial and to be construed and applied liberally to effect the beneficent purposes, and that reasonable doubts are to be resolved in favor of claimants * * *."

 We quoted in Sloss-Sheffield Steel & Iron Co. v. Harris, 218 Ala. 130, 117 So. 755, from Ex parte Coleman, 211 Ala. 248, 100 So. 114, as follows:

"'The burden is on the plaintiff to reasonably satisfy the trial court that the accident arose out of and in the course of the workman's employment, and, where there is any substantial legal evidence in support of the finding of the trial court, the judgment, whether affirmative or negative, will not be disturbed on appeal. From the fact alone of a wilful assault upon the workman, it cannot be presumed that it arose out of his employment. That conclusion must be drawn, if at all, from the circumstances of the case, or from the testimony of witnesses, tending to show the causal relation of the employment to the injury; and "the rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment and not by some other agency." Madden's Case, 222 Mass. 487, 495, 111 N.E. 379, 383, L.R.A.1916D, 1000.'"

It also has been thoroughly and finally settled by decisions of this court that:

"* * * if, upon any reasonable view of the evidence, it will support the findings and conclusion of the trial court, the judgment rendered thereon will not be disturbed. * * *" Martin v. Sloss-Sheffield Steel & Iron Co., 216 Ala. 500, 501, 113 So. 578(1), 579.

 We said in Garrett v. Gadsden Cooperage Co., 209 Ala. 223, 224, 225, 96 So. 188.

"* * * As to whether plaintiff's injuries were caused by an accident and in the course of his employment, no presumption is to be indulged. Courts generally seem to have settled upon the proposition that the fact that an injury is the result of a willful or criminal assault upon the employee does not prevent the injury from being accidental within the meaning of Workmen's Compensation Acts. City of Chicago v. Industrial Commission, 292 Ill. 406, 127 N.E. 49, 15 A.L.R. 586, note. The act here, following closely the language of the Minnesota law, defines 'accident' as meaning:

"'An unexpected or unforeseen event, happening suddenly and violently, with or without human fault, and producing at the time injury to the physical structure of the body, by accidental means.' * * *

"* * * But the courts, viewing the matter of chance or accident from the workman's viewpoint, construing the legislative purpose as being, on economic grounds, to provide insurance for the workmen against personal injury not expected or designed by himself, have adopted a meaning which they deem necessary to the effectuation of the broad legislative purpose, and hence they hold that a willful assault may be an accident within the definition of the act. * * *

"To bring plaintiff's case within the scope of the act it must appear, not only that his injury was caused by accident, but that it arose out of and in the course of his employment. As to this, the fact that both plaintiff and

his assailant employee were at the time on defendant's premises, and engaged in the performance of work for defendant, is not at all conclusive. It cannot be intended as matter of law or fact that LeFergie, when he willfully and wantonly struck plaintiff, was in the performance of defendant's work. * * * Liability to an assault of the character shown must have been a hazard or risk of the work. The act provides that an accident arising out of and in the course of the employment 'shall not include an injury caused by the act of a third person or fellow employee intended to injure the employee because of reasons personal to him, and not directed against him as an employee, or because of his employment,' * * * It results that, if an assault on an employee is committed by another, whether co-employee or stranger, *solely* to gratify personal ill will, anger, or hatred, the injury done cannot be said to arise out of the employment within the meaning of the Workmen's Compensation Act. 15 A.L.R. p. 594. To justify recovery 'The rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment, and not by some other agency.' Madden's Case, 222 Mass. 487, 495, 111 NE. 379, 383 (L.R.A.1916D, 1000). In Hinchuk v. Swift & Co., 149 Minn. 1, 182 N.W. 622, it is said that the principle applicable to cases like that at bar is that the injury is included within the statute if there is some causal relation between the employment and the injury; the court adding:

" 'Not that the injury must be one which ought to have been foreseen, but it must be one which, after the event, may be seen to have had its origin in the nature of the employment.' " [Emphasis supplied.]

In the case at bar, it is our opinion that the assault and resultant injuries arose from a risk that was incidental to employment. Eason was the person to whom appellant .intrusted the duty of assigning repair work on motor vehicles to the employed mechanics. It was Eason's duty to supervise the mechanics, check the payroll sheets for accuracy and to remove therefrom any listing of mechanical work improperly or erroneously listed. Mechanics had the right, under their method of employment, to discuss their grievances concerning the payroll with Eason, and to protest his action adversely affecting the mechanic's compensation claim. Winslett's protest originated during his employment and while on duty.

It would be fair to observe that Winslett's use of the epithet, whether directed at Eason or at Winslett himself,. triggered an immediate excuse for the assault and battery. But we cannot ignore the other evidence, take the epithet out of context, freeze the motivation for the assault and battery to the one incident, and thereby make the unlawful conduct of Eason in committing the assault and battery a purely personal matter. Such isolation of the one incident—the use of the epithet—would not be consonant with the rule of res gestae.

We cannot say, under the evidence as reported in the trial court's opinion, that the grievance which Winslett communicated to Eason, was divorced from the employment, and that the epithet used, although implicational and unnecessary, did not have a connection with the grievance.

We would not be willing to say that Eason's anger, culminating in the physical attack on Winslett, was not in some degree generated by the emphatic protest taking place before the utterance of the epithet. We think that a reasonable view of the evidence would suggest that Eason's conduct in committing the assault was partly induced by a temper that was kindled and set in motion when Winslett, maybe untactfully, accused Eason of wrongfully removing the 'transmission' listing on the payroll. We, therefore, trace the resultant in-

juries to a proximate cause set in motion by the employment, and not by some other agency.

 The employer should be responsible for the conduct of an excitable and impetuous supervisor in the prosecution of his duties, until there is sufficient interruption in the performance of such duties to justify the conclusion that the supervisor had abandoned his employment, and that the assault was an independent and undivided act, free from any association or connection with his employment.

The judgment of the trial court is due to be affirmed; and it is so ordered.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, and was adopted by the court as its opinion.

Affirmed

LIVINGSTON, C. J., and LAWSON, GOODWYN and COLEMAN, JJ., concur.