[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 805 
The minor children of Rodney Dale McGaughy, an employee of Allied Products Company who died as a result of a gunshot wound inflicted by a co-employee, seek to recover workmen's compensation benefits under the Alabama Workmen's Compensation statute. From a judgment in favor of Allied Products Company denying compensation benefits, the minor children bring this appeal.
The evidence shows that Rodney Dale McGaughy (Employee) was employed by Allied Products Company (Employer) as operator of a ball mill, a machine used to crush lime into powder. Employee's brother, Mark McGaughy, was employed by Allied Products Company as a kiln operator, and worked with Employee on the same work shift. There is disputed testimony concerning the likeness in physical appearance between the two brothers. James Williams, a co-employee of both Mark and Employee, was assigned as kiln operator helper to Mark. Mark had had several work-related problems with Williams, some of which he had discussed with his supervisors. There is no evidence of any personal contact, at work or socially, between Williams and Employee.
On June 5, 1979 around 11:00 p.m., Employee, Mark and Williams reported to work at Employer's plant. Mark and Williams soon became involved in an argument, apparently over whether Williams was allowed to take a break in the kiln control room, an air-conditioned, glass-enclosed office in which Mark worked. Mark, after consulting with the supervisor, made a statement to Williams to the effect that Mark would keep up with the amount of time Williams spent on break. Williams apparently became angry, and left the room.
A short while later Williams returned to the control room, squatted down, and began cursing at Mark and shaking his fists. Mark began to approach Williams, whereupon Williams turned and ran out of the control room and into an open area outside the control room. Mark chased Williams out into this open area about twenty feet and took a swing at him. At this point Williams ran toward a side door, and Mark returned to the control room to call his supervisor.
Employee was in the control room when the altercation began. When Mark followed Williams out of the control room, Employee also left the control room and stood about ten feet behind Mark. During this time Employee made no move to intervene and said nothing to either party.
Mark stated that after Williams ran through the side door and down some stairs, Mark returned to the control room to telephone his supervisor. When he reached the control room he heard a loud noise like a gunshot. He ran back out of the control room and found Employee lying out the side door on a small platform. Employee died as a result of this gunshot wound.
Jimmy Rhodes was Employee's assistant. At the time of the shooting, he was working with two other men to repair the dust collector screw. This screw was approximately thirty feet from where the shooting occurred.
Rhodes stated that he heard a loud noise. When he heard the noise, he turned and saw Employee standing on the platform near the ball mill control panel. Rhodes also saw James Williams at the bottom of the stairs. Rhodes stated that Williams stopped, turned around, came back up about two steps, and fired a shot. Rhodes stated that at that point Employee was standing still on the platform.
Rhodes also testified that just prior to the shooting, Employee was observed walking slowly through the side door out onto the platform. Rhodes stated that this was where Employee was required to be so that when the dust collector screw was repaired *Page 806 
Employee could push the button to restart the machine.
Later it was discovered that the loud noise which everyone heard prior to the shooting was a bucket of bolts falling over on the platform. No one saw what caused the bolts to fall over.
David Ponder was helping Rhodes work on the dust collector screw. Ponder said that when he turned he saw Employee looking down the stairs at Williams. It was at this time that Williams turned, took about two steps up the stairs, and fired his gun at Employee. Further, Ponder testified that Employee was in a place which his job required him to be.
The widow and minor children of Employee brought suit on October 10, 1979 against Employer to recover workmen's compensation benefits, alleging that Employee's death arose out of and occurred in the course of his employment. The case was tried on May 27, 1981, and judgment for the Employer was entered on June 24, 1981. The court specifically found:
 The Court further finds that Mark McGaughy told his brother to grab Williams, or words to that effect; that Dale McGaughy pursued Williams; that a few seconds after James Williams ran from the scene with Dale McGaughy in pursuit, Dale McGaughy knocked over a one hundred pound bucket of bolts located on a platform; that at the time the bucket was knocked over Williams had just descended or was descending stairs attached to that platform; that Williams turned around, took a couple of steps towards Dale McGaughy and shot him, which shot caused the death of Dale McGaughy; and that Williams knew the person whom he shot was Dale McGaughy at the time he shot.
 The Court concludes that Dale McGaughy was shot and killed as a result of his pursuit of James Williams; that Dale McGaughy was not involved in the argument between Williams and Mark McGaughy; that Dale McGaughy was not acting on behalf of his employer or within his employment in any way when he pursued Williams; that there was no causal relation between the employment and the death; that Dale McGaughy was killed for reasons unrelated to his employment; and that Dale McGaughy was not killed by an accident arising out of and in the course of his employment.
The court further found that Employee, in pursuing Williams, left his employment and by so doing violated several reasonable company rules of which Employee knew. The widow and minor children appeal from that judgment.
The issues on appeal concern the correctness of the trial judge's findings. The questions presented are (1) whether the trial court erred in its finding that Employee was shot and killed as a result of his pursuit of Williams, (2) whether the fatal shooting of Employee during working hours was an accident arising out of and in the course of Employee's employment, and (3) whether Employee was in violation of company rules of which he had knowledge, thus precluding his dependents from recovering compensation benefits under § 25-5-51, Code 1975.
We must first point out that the scope of review in workmen's compensation cases is limited to an examination of the evidence to determine if any reasonable view of it supports the conclusions of the trial court. This court will not examine the weight or preponderance of the evidence but will look only to see if there is any legal evidence to support the findings of fact of the trial court. Weatherly v. Republic Steel Corp.,391 So.2d 662 (Ala.Civ.App. 1980); Newman Brothers, Inc. v.McDowell, 354 So.2d 1138 (Ala.Civ.App. 1977).
Appellants contend, with regard to the first issue, that no reasonable view of the evidence would support a finding that Employee was killed because he was pursuing Williams. We agree with this contention. The evidence is undisputed that Employee had been standing in the control room for a time when the disagreement between Mark and Williams began. Mark followed Williams out of the control room, whereupon Mark swung his fist at Williams. At this point the testimony indicates that Williams ran out a side door and down some stairs. *Page 807 
Mark returned to the control room where he stated he planned to telephone the supervisor. At this point the evidence places Employee on a small platform just outside the side door and within three feet of the ball mill control panel which he monitored. One witness testified that he first observed Employee standing on the platform; yet that same witness stated that he observed Employee walking slowly through the side door onto the platform.
In its findings of fact, the trial court found that Mark had told Employee to grab Williams. Mark denied this. The supervisor, however, testified that shortly after Employee was shot Mark told the supervisor that he had told Employee to grab Williams. This testimony was objected to on the ground of hearsay. The trial court stated that the evidence would be admitted for impeachment purposes and overruled the objection.
The law in this state clearly holds that a statement admitted for impeachment purposes can operate only to discredit a witness and cannot be made the basis of a finding of fact necessary to the establishment of a liability or defense.Randolph v. State, 348 So.2d 858 (Ala.Crim.App.), cert. denied,348 So.2d 867 (Ala. 1977). In the present case the trial court specifically admitted the supervisor's testimony for impeachment purposes, and under Alabama case law could not later use that testimony for substantive purposes. Therefore, there is no evidence to support a finding that Mark told Employee to grab Williams.
Without this evidence we cannot find any support for the court's finding that Employee was pursuing Williams. The word "pursuit" connotes an attempt to overtake or capture. See
Webster's Third New International Dictionary (1966). In the present case there is no evidence to support a finding that Employee attempted to overtake or capture Williams.
The evidence indicates that a bucket of bolts was spilled on the platform. Upon hearing this noise the other employees looked up and saw Employee standing on the platform. No one saw Employee make any move to descend the steps to stop Williams. No one saw Employee running or moving fast toward Williams. At the time the witnesses looked up, they simply saw Employee standing on the platform within three feet of the ball mill control panel.
During the altercation between Williams and Mark, Employee did not speak to Williams. He never made any attempt to intervene in the fight. The evidence is that Employee was standing on the platform by the stairs which Williams had just run down and made no attempt to follow Williams, nor did he say anything to Williams. It is undisputed that this platform was adjacent to the control panel at which Employee's job duties required him to be.
In light of the evidence that Employee was at a place where his duties required him to be and that he had not engaged in any dispute or altercation with Williams or threatened Williams in any way, the fact that a bucket of bolts overturned in the vicinity of Employee is no evidence that he was in "pursuit" of Williams at the time Williams shot him. Consequently, we conclude that the trial court's finding that Employee left his employment to pursue Williams is not supported by the evidence.
Appellants' second contention is that the trial court erred in finding that the fatal shooting of Employee was not an accident arising out of and occurring in the course of his employment. Again, we agree with appellants' contention.
Section 25-5-1 (9), Code 1975, provides in part:
 (9) Injuries by an accident arising out of and in the course of his employment . . . shall not include an injury caused by the act of a third person or fellow employee intended to injure the employee because of reasons personal to him and not directed against him as an employee or because of his employment. . . .
A wilful assault by a co-employee may be compensable under the Alabama workmen's compensation statute. Garrett v. GadsdenCooperage Co., 209 Ala. 223, 96 So. 188 *Page 808 
(1923). However, the fact of a wilful assault alone does not conclusively establish that the assault arose out of the employee's employment. That conclusion must be drawn from the circumstances of each case. Sloss-Sheffield Steel Iron Co. v.Harris, 218 Ala. 130, 117 So. 755 (1928). The fact that the assailant and the employee were on the employer's premises at the time of the altercation, and engaged in the performance of work, is not conclusive. Tiger Motor Co. v. Winslett, 278 Ala. 108, 176 So.2d 39 (1965). "`[T]he rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment and not by some other agency.'Madden's Case, 222 Mass. 487, 495, 111 N.E. 379, 383, L.R.A. 1916D, 1000." Sloss-Sheffield Steel Iron Co. v. Harris,supra. If the assault is committed solely to gratify personal ill will, anger, or hatred, the injury or death cannot be said to arise out of the employment relationship. Tiger Motor Co. v.Winslett, supra.
We cannot find that there is any evidence to support the trial court's conclusion that the shooting involved in this case did not arise out of the employment relationship. It is undisputed that Employee had not been involved in the argument between Mark and Williams. As we have previously stated, there is no evidence that Employee left his employment to pursue Williams. Therefore, we find that Employee was shot while in the scope of his employment, and the shooting was not due to personal enmity.
Appellants lastly contend that the trial court erred in finding that Employee was in violation of several company rules, thus precluding his dependents from recovering compensation benefits under § 25-5-51. That section provides, in part, that "no compensation shall be allowed for an injury or death caused by the wilful misconduct of the employee . . . or his wilful breach of a reasonable rule or regulation of his employer, of which rule or regulation the employee has knowledge."
We are mindful of the scope of our review in cases of this sort, but we cannot find any evidence to support a finding that Employee violated Employer's rule. The Employee had signed a statement that he agreed to abide by the "General Conduct and Safety Rules" booklet. However, there is no evidence to support a finding that Employee had violated these rules. He had not participated in any fight, and at the time he was shot, he was at the proper place to perform his work duties.
For the reasons stated above, the judgment of the court is reversed and the cause remanded for entry of judgment consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
WRIGHT, P.J., concurs.
HOLMES, J., concurs in the result.