BRADLEY, Presiding Judge.
This is a workmen’s compensation case.
In May 1985 the employee, Allen Powell, was murdered by James Martin and Edward Monteith in the Timberlane subdivision of Montgomery, Alabama. The employee’s widow and children maintain that the murder occurred while the employee was working—specifically, while he was conducting an automobile test drive.
The employer, Jack Ingram Motors, contends the employee was not working at the time of his death. As a result, employer maintains employee’s children are not entitled to workmen’s compensation benefits. (Employee’s widow has since remarried, and, on appeal, she does not seek benefits.)
After evidence was presented ore tenus, the trial court entered its order summarizing the evidence, which provides, in pertinent part:
“On the day he was killed Powell [employee] was scheduled to work until 7:00 p.m.; however, salesmen sometimes agreed to rotate their work hours so they could get off earlier. If this occurred, Powell would have gotten off work at 5:00 p.m. or 5:30 p.m.
*38 “Kathy Ellison was an employee of Ingram, and had known Powell for about three months. She and her husband were interested in purchasing a new Nissan 300 ZX car; however, her husband had been negotiating the purchase with another salesman, Rick Sharpless. Sharpless testified that after preliminary negotiations, Mr. Ellison’s interest in the purchase seemed to wane when he was informed that the monthly payments would be approximately $400.00 per month.
“On the day that Powell was killed, Mrs. Ellison had gotten off work at 4:00 p.m., gone home, gone to a pub for a drink, and returned to the Ingram lot to pick up her car. As Powell was leaving, she asked him if she could drive the car, and Powell agreed; however, he suggested they depart from the AUM park instead of the Ingram lot. Mrs. Ellison drove her car to the AUM park. Powell apparently drove to the Arrowhead Trading Post, purchased a six pack of Miller Lite beer and then drove to the AUM park to meet Mrs. Ellison. Mrs. Ellison drove the 300 ZX from AUM on to Taylor Road to its intersection with Vaughn Road, took a left onto Vaughn Road and eventually turned right into the Timber-lane subdivision. She drove around Tim-berlane Road and stopped, she testified, to allow Powell to switch to the driver’s seat. She and Powell remained stopped at this location for at least fifteen minutes. She testified that Powell finished his beer, got out and was confronted by Martin and Monteith. He then got into the driver’s seat and was shot by Martin as he attempted to leave. Monteith told Sheriff’s Investigator Huggins that Powell was in the driver’s seat when he was confronted. A Miller Lite can with Powell’s prints on it was found in a ditch on the passenger’s side of the automobile, and a partially consumed can of beer was found on the floor board of the car behind the driver’s seat. Mrs. Ellison testified that she did not drink any beer.
“Mr. Priddy, former new car manager for Ingram testified at the trial. He testified that Ingram’s new car salesmen are furnished a demonstrator automobile for $60.00 per month. Driving a demonstrator is not required by Ingram, but is recommended. With some limitations, the salesmen can use demonstrators for personal business. He further testified that Ingram had preprogrammed routes for demonstration drives. It is undisputed that the place where Powell was killed is not on the route and, in fact, it is far from the route. Additionally, most demonstration drives start from the Ingram lot and it is not normal for a salesman and a potential customer to stop for fifteen minutes while on a test drive. Finally, Priddy testified that drinking on the job is against Ingram policy.”
The trial court then concluded that the employee’s death did not arise out of and in the course of his employment and denied benefits.
In its order the court held that the case’s resolution turned on these facts: (1) where the employee was killed; (2) the amount of time he was stopped there; and (3) his reason for being at the location. Particularly, the court found that, because the murder location was not on the prepro-grammed test-drive route, because the employee had been stopped there for at least fifteen minutes, and because the employee was consuming beer, he had departed from Jack Ingram Motors’ business and was on his own personal business.
We recognize that, if there is any legal evidence .to support the trial court’s finding that the employee’s death did not arise out of and in the course of employment, we must affirm. Barfield v. General Steel Tank Co., 370 So.2d 1005 (Ala.Civ. App.), writ denied, 370 So.2d 1008 (Ala. 1979).
Applying the aforementioned review standard, we examined the evidence relied on by the trial court to support its finding that the employee’s death did not arise out of and in the course of employment. First of all, evidence was presented which established the employee’s chosen test-drive route for that day was not a *39 route specifically authorized by Jack Ingram Motors.
Additionally, there is evidence to the effect that employee was in the area where he was killed for approximately ten to fifteen minutes and that part of that time was spent consuming beer—an activity not authorized by the employer. Finally, there was also some testimony which indicated employee was “off work” at the time of his murder.
We are aware of our interpretation of section 25-5-1(9), Code 1975, to the effect that an employee may be the victim of an assault and his injury or death still be compensable. McGaughy v. Allied Products Co., 412 So.2d 803 (Ala.Civ.App.1982). However, “the fact of a willful assault alone does not conclusively establish that the assault arose out of the employee’s employment. That conclusion must be drawn from the circumstances of each case.” McGaughy.
The trial court in this case considered the evidence and found that employee was not shot in the course of his employment and, further, the shooting did not arise out of his employment. We have summarized the evidence relied on by the court in reaching this conclusion, and fail to find that the court’s conclusion was unsupported by evidence. Barfield supra. Thus, we affirm the court’s conclusion that the assault did not arise out of or in the course of employment.
We note that employee’s widow and children also argue that the court erred in not applying the “street risk” doctrine to employee’s death. That doctrine provides that if an employee is required to continually be on the streets and is injured as a result thereof then his injury would be one arising out of employment. United Service Insurance Co. v. Donaldson, 254 Ala. 204, 48 So.2d 3 (1950).
Since the trial court found that the employee was on personal business at the time of his death, rather than discharging his duties for his employer, we conclude that the street risk doctrine is inapplicable.
The judgment of the trial court is, therefore, affirmed.
AFFIRMED.
HOLMES and INGRAM, JJ., concur.