PITTMAN, Judge,
dissenting.
I conclude that the trial court’s judgment finding that Add/s shooting death was not a work-related injury is supported by substantial evidence; therefore, I dissent.
The dependents and the employer submitted the ease to the trial court on a stipulation of facts (contained in various evidentiary submissions by both parties) and further stipulated that the only issue for the trial court to decide was whether the employee’s death occurred in the line and scope of her employment. As stated above, the trial court held that the employee’s death did not occur in the line and scope of her employment. After reviewing the record, I would adopt the trial court’s finding of facts as follows:
' “On or about May 28, 1996, [the employee] was tragically shot and killed while on her break at the Montgomery plant of Piknik Products Company. Richard Flowers, a temporary employee assigned to work at Piknik by Teamwork Temporary Services, confessed to committing the murder and was subsequently convicted of that crime. Although unknown to Piknik at the time, Flowers had recently been released from prison following a prior conviction for murder after beating a person to death with a shovel. At the time of the shooting Flowers was not on duty at Piknik, and he had been off duty for several days prior because of an injury and a company holiday. Although Flowers previously had worked on the second *1098 shift, which was the same shift [the employee] worked, he had been transferred to first shift by the Production Supervisor, Eddie Windham. Flowers was informed of this change earlier in the afternoon of May 28. The transfer was precipitated by a report that" Flowers had gotten into an argument with his supervisor on second shift, Herb Jordan, during which Flowers had used offensive language. Because of this ' incident, Windham decided to move Flowers to [first] shift, where there was more management support. After being informed of the shift change, Flowers was instructed to return to the plant on the morning of the. next day to be'gin working first shift. .Flowers then left the Piknik premises.
“Later that evening, Flowers returned to Piknik. Robert Taylor, Piknik’s Sanitation Supervisor, saw Flowers in the break room, talking and cutting up with Piknik employees. Taylor spoke with Flowers at that time, and Flowers related to Taylor that his shift had been changed and that he would start working first shift the next day. Flowers stated that he appreciated having a job at Piknik. Flowers then asked Taylor if he had seen Eddie Windham. Taylor told Flowers that he had not seen him. At that time, Flowers seemed to be in a good mood and looking forward to starting his shift the next day. Taylor saw Flowers leave the building. He later saw [the employee] leave the building through another exit. Another employee, Albert Love, who was possibly the last person to speak to Flowers prior to the shooting, testified that he had never heard of any problems between [the employee] and Flowers nor had he heard anyone complain about Flowers on the job. Only minutes prior to the shooting Love said that Flowers ‘shook, my hand, gave me five’ and said that he ‘had no beef ... no hard feelings with no one’ and that ‘they put him - on first shift.’ Love stated that Flowers then told him that he was ‘fixing to go’ and, about that time, [the employee] ‘walked up to the ramp and she spoke and we spoke, and he (Flowers) went down the ramp.’ According to Love, Flowers did not follow [the employee] out of the building directly; instead, he went in another direction towards the maintenance boiler room door and she exited through the main entrance. Love did not actually see Flowers exit the building, however, approximately ‘five minutes’ later, Flowers shot [the employee] numerous times while she was seated in her car, on break, in the company parking lot.”
Section 25-5-1(9) defines “injury” as:
“only injury by accident arising, out of and in the course of fhe employment. ... Injury does not include an injury caused by the act of a third person or a fellow employee because of reasons personal to him or her and not directed against him or her as an employee or because of his or her employment.”
This portion of § 25-5-1(9) has been interpreted as follows:
“It is settled that a willful assault by a coemployee may be considered an accident compensable under "the Alabama workers’ compensation statute. However, the fact of a willful assault does not conclusively establish that the assault arose out of the course of the employee’s employment. That conclusion must be drawn from the circumstances of the case. McGaughy v. Allied Products Co., 412 So.2d 803 (Ala.Civ.App.1982). An assault that is based solely upon personal ill will, hatred, or anger does not arise out of and in the course of the employment. Thompson v. Anserall, Inc., 522 *1099 So.2d 284 (Ala.Civ.App.1988). To justify workers’ compensation for injuries caused by an assault by a coemployee, the rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment, and not by some other agency. Tiger Motor Co. v. Winslett, 278 Ala. 108,176 So.2d 39 (1965).”
Beverly v. Ruth’s Chris Steak House, 682 So.2d 1360, 1362 (Ala.Civ.App.1996).
The dependents argue that they presented evidence that Flowers shot and killed the employee because the employee had reported Flowers’s misconduct on the job to their supervisor, who then moved Flowers from the second shift to the first shift. The employer filed a motion to strike several evidentiary submissions submitted by the dependents which the employer contended contained hearsay about the employee’s role in having Flowers moved from the second shift to the first shift. The trial court did not explicitly grant the motion to strike; however, in its judgment holding that the employee’s shooting death was not in the line and course of her employment, the trial court did state:
“[The dependents] attempt to establish a potential causal connection by referencing certain statements that constitute hearsay, hearsay within hearsay, or which reflect speculation and lack of personal knowledge. This Court finds that such statements are not admissible, credible evidence. Morever, this Court further finds that, even if admissible, such statements would not support a finding that [the employee’s] employment set in motion the proximate cause that resulted in [the employee’s] tragic death.”
As shown above, the trial court disregarded the evidence that the dependents sought to admit which attempted to causally relate the shooting with the employee’s employment. I conclude that the trial court did not err by disregarding that evidence. The dependents do not argue on appeal that the trial court erred by stating that the evidence was inadmissible hearsay. Therefore, I would affirm the trial court’s judgment.