YATES, Judge.
Gregory A. Beverly appeals from a summary judgment in favor of Ruth’s Chris Steak House (hereinafter “Ruth’s Chris”) and State Claims Adjusters, Inc. (heremafter “State Claims”), the workers’ compensation insurer for Ruth’s Chris; the trial court ruled as a matter of law that Beverly was not entitled to workers’ compensation benefits.
Beverly worked for Ruth’s Chris as a side cook in the kitchen. On July 21, 1994, Beverly was peeling and deveining platters of shrimp for the day’s lunch and dinner orders. A co-worker, Quinton Flood, approached Beverly and tried to take some of the shrimp so that he could give them to a relative who worked next door. Beverly testified in a deposition that it was against company rules for the employees to eat any of the shrimp and that Flood was “stealing [the shrimp] and he was trying to give it away.” Beverly refused to let Flood have any of the shrimp; Beverly then left the Mtehen for a nfinute, and when he returned some of the shrimp were missing.
Beverly walked to the back of the kitchen to see if Flood had taken the shrimp; he found Flood seasoning the shrimp and preparing to cook them. Beverly took the shrimp away from Flood and began walking to the front of the kitchen. Flood followed Beverly, calling him names, touching him, and finally “jumped up M Ms face.” Beverly pushed Flood away and Flood fell to the floor. Co-workers separated the two men and Beverly went outside and smoked a cigarette to “cool off.” Beverly then came back inside and resumed working; he and Flood did not speak further. However, within minutes of Beverly’s return, Flood came up behind Beverly and poured three gallons of boiling water over him, severely burning Beverly’s shoulder, chest, and arm. Beverly incurred medical bills of $25,877 and was permanently scarred as a result of Ms Mjury.
On September 8, 1994, after an Mvestigation, State Claims sent a letter to Beverly, informmg him that Ms claim for workers’ compensation benefits had been demed and statmg: “You imtiated the physical contact wMch resulted in your Mjury. The con-taeVargument was not M the scope of your employment.” Janet Williams, an adjuster for State Claims, testified M a deposition as to why the claim was demed:
“Just based upon our Mvestigation from what I can tell, it appears that the first physical contact leadMg up to the resultMg Mjury was made by [Beverly]. And second of all, it does not appear that it was M the course and scope of Ms employment. He’s not required in his job duties to fight, argue, and that Mnd of manner.”
As a result of his injury, Beverly was unable to return to work at Ruth’s Chris until October 1994.
On December 6,1994, Beverly sued Ruth’s Chris and State Claims for workers’ compensation benefits, also allegMg the tort of out *1362 rage regarding State Claims’ refusal to provide coverage for his injuries. The court granted a motion by Ruth’s Chris and State Claims for separate trials of Beverly’s two claims.
On August 3, 1995, Ruth’s Chris and State Claims both moved for a summary judgment, attaching to the motions deposition testimony of Beverly and Williams. After a hearing, the court entered a summary judgment in favor Ruth’s Chris and State Claims on September 7,1995. Beverly appeals, contending that the court erred in ruling that he was not entitled to workers’ compensation benefits; Beverly also contends that he had submitted substantial evidence to support his claim of outrage and thereby precluded a summary judgment.
Because Beverly’s injury occurred after August 1, 1992, his case falls under the new Workers’ Compensation Act. This court’s standard of review under the new act is as follows: we will view the facts of the case in the light most favorable to the findings of the trial court. The court’s judgment will not be reversed unless it is clear that the court’s findings are manifestly contrary to the evidence as contained in the record as a whole or unless it is clear that fair-minded persons in the exercise of impartial judgment would adopt a contrary conclusion. Whitsett v. BAMSI, 652 So.2d 287 (Ala.Civ.App.1994).
After reviewing the record and deposition testimony, as well as surveying the applicable case law, we conclude that the trial court’s holding that Beverly is not entitled to workers’ compensation benefits is manifestly contrary to the evidence contained in the record as a whole, and we reverse its judgment.
It is settled that a willful assault by a coemployee may be considered an accident compensable under the Alabama workers’ compensation statute. However, the fact of a willful assault alone does not conclusively establish that the assault arose out of the course of the employee’s employment. That conclusion must be drawn from the circumstances of the case. McGaughy v. Allied Products Co., 412 So.2d 803 (Ala.Civ.App.1982). An assault that is based solely upon personal ill will, hatred, or anger does not arise out of and in the course of the employment. Thompson v. Anserall, Inc., 522 So.2d 284 (Ala.Civ.App.1988). To justify workers’ compensation for injuries caused by an assault by a coemployee, the rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment, and not by some other agency. Tiger Motor Co. v. Winslett, 278 Ala. 108,176 So.2d 39 (1965).
It is undisputed that the argument between the two men arose out of Beverly’s refusal to allow Flood to steal the shrimp from the restaurant; Williams conceded in her deposition that the argument began over Flood’s taking the shrimp. State Claims and Ruth’s Chris argue that State Claims was justified in refusing to pay benefits to Beverly, contending that Beverly had initiated the physical aspect of the altercation by pushing Flood away from him. This reasoning is not borne out by the evidence; Beverly testified that as he walked away from Flood after retrieving the shrimp, Flood followed, cursing him and touching him. Beverly testified that he finally pushed Flood away from him after Flood “jumped up in his face.” In addition, this reasoning ignores the focus of a court’s inquiry under these facts: while the question of who touched whom first can be significant, a trial court must go beyond this point in time to determine whether the altercation and resulting injury arose out of and in the course of the workers’ employment, and not by some other agency. Id.
We note that the record reveals no evidence of any animosity between Flood and Beverly before this incident occurred; Beverly testified in a deposition that before the attack he and Flood had been “tight” and that they had socialized many times after work, playing basketball together and visiting each other’s home. There is also nothing-in the record to indicate that the stolen shrimp were either Beverly’s or Flood’s personal property, or that it was proper for kitchen employees to take the restaurant’s food and then give it away. In fact, Beverly testified in a deposition that it was against the rules of the restaurant for the kitchen employees to take or eat any of the shrimp.
State Claims also contends that its denial of benefits to Beverly was proper because fighting and arguing were not among Bever *1363 ly’s duties in the course of his employment. We do not find this argument to be persuasive. Although we agree that Beverly’s duties at the restaurant did not include fighting and arguing, we note that the fighting and arguing stemmed from the fact that Beverly prevented another employee from stealing the restaurant’s food, an action which most certainly falls within the line and scope of his employment.
Ruth’s Chris and State Claims, citing Martin v. Sloss-Sheffield Steel & Iron Co., 216 Ala. 500, 113 So. 578 (1927), next contend that Beverly is due to be denied benefits because Flood’s attack took place 15-20 minutes after the initial altercation between the two men; the insurer and the restaurant argue that the passage of time between the argument and the attack shows that Flood was solely motivated by personal ill will toward Beverly when he attacked and that Flood’s attack was thus not related to Beverly’s employment.
We disagree. In Martin, two employees, Martin and Anderson, quarreled over a matter that was work-related and then separated. The two later renewed their quarreling after Martin sought out Anderson while they were both on a break. Martin began to taunt and curse Anderson, daring him to fight; Anderson then picked up an iron bar and killed Martin with it. In denying compensation to Martin’s estate, our supreme court stated:
“The decedent was not, when killed, in the discharge of any duty of his employment, nor in pursuit of the master’s business, notwithstanding that the original causa belli was connected with that business. The conclusion, we think, is clear that the decedent was renewing a quarrel because of his purely personal anger and resentment; and that he was assaulted and slain by [Anderson] for reasons that were purely personal to him, and not because he was an employee, or because of his employment, or because he was engaged in the duties of his employment.”
Id., 216 Ala. at 501-02,113 So. at 579-80.
The facts of Martin in no way resemble the facts presented here. Although Flood and Beverly separated after their initial altercation, Flood attacked Beverly within minutes of Beverly’s return to his post in the kitchen, while Beverly was engaged in the performance of his duties. There is no evidence that Flood and Beverly renewed their quarrel, or that Beverly taunted Flood in any way, after Beverly returned from his break; the record reveals that the two men did not speak to one another again before Flood doused Beverly with the boiling water. Under the evidence presented here, we are unwilling to hold that a 20-minute interval between the initial quarrel and the attack, without more, was sufficient to transform the basis of Flood’s resentment toward Beverly from anger at being thwarted in his thievery to a pure and personal ill will that was unrelated to Beverly’s performance of his duties. Clearly, Beverly was attacked at his post in the kitchen as a result of his employment duties, i.e., because he successfully prevented the theft of the restaurant’s food.
We, therefore, conclude that the trial court erred in determining that, as a matter of law, Beverly’s injury did not arise in the course of his employment with Ruth’s Chris. Accordingly, we reverse that portion of the judgment so holding and remand the case for further proceedings, for the trial court to determine whether Beverly is entitled to any compensation and, if so, the amount of compensation.
Beverly next contends that the court erred in entering a summary judgment for the defendants on his claim of outrage. After reviewing the record, however, we must affirm the judgment as to that claim. An action based upon the tort of outrage requires proof that: (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; and (3) the distress was severe. Moore v. Spiller Associated Furniture, Inc., 598 So.2d 835 (Ala.1992). To support an outrage action, the conduct has to be so extreme and outrageous in degree “as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.” Id., at 837. Beverly presented no substantial evidence of conduct that reached this level of reprehensibility. Accordingly, *1364 we must affirm the summary judgment as to the outrage claim.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS.
ROBERTSON, P.J., and CRAWLEY, J., concur.