YATES, Presiding Judge.[1]
Professional Business Owners Association Workers’ Compensation Fund and Piknik Products Company, Inc. (hereinafter collectively referred to as “Piknik”), sued Samson Addy, as the surviving spouse of Annie Bibb Addy, and their minor children, on July 15, 1996, seeking a judgment declaring whether Annie’s shooting death was a compensable injury, and, therefore, whether Piknik is responsible for the payment of death benefits under the Workers’ Compensation Act. Samson Addy, individually, and on behalf of his minor children (Samson and the children are hereinafter referred to as “the depen-dants”), answered and counterclaimed on December 18, 1996, seeking workers’ compensation death benefits pursuant to §§ 25-5-60 and -61, Ala.Code 1975. On February 29, 2000, the parties jointly moved to submit the case to the trial court on a stipulation of facts and submission of evidentiary materials. On June 1, 2001, the trial court entered an order finding that Annie’s shooting death did not arise *1095 out of and in the course of her employment and it denied death benefits to her dependents. The dependents appeal.
This case is governed by the 1992 Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975. This Act provides that an appellate court’s review of the standard of proof and its consideration of other legal issues shall be without a presumption of correctness. § 25 — 5—81(e)(1), Ala.Code 1975. It further provides that when an appellate court reviews a trial court’s findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2). Our supreme court “has defined the term ‘substantial evidence,’ as it is used in § 12-21-12(d), to mean ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court has also concluded: “The new Act did not alter the rule that this court does not weigh the evidence before the trial court.” Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).
At the time of the shooting on May 28, 1996, Annie had been employed at Pik-nik for six years as a machine operator. She was 31 years old, married, and had three minor children. Addie was shot and killed by Richard Flowers while she was sitting in her car at the Piknik plant during a scheduled break. Flowers confessed to Annie’s murder and was subsequently convicted of the crime. Flowers was a temporary employee assigned to work at Piknik by Teamwork Temporary Services. When Flowers was hired by Teamwork, its president, Abby Fleming, was aware that he had been convicted of manslaughter and that he had recently been released from prison. Flowers had been convicted in 1980 for beating a person to death with a shovel. Fleming testified that Teamwork had made Piknik aware of Flowers’s criminal history and that Flowers himself had also informed Piknik of his criminal history.
Flowers was not on duty on the day of the shooting and had, in fact, not worked for several days preceding the shooting.[2] Flowers had worked the second shift at Piknik with Annie; however, earlier on the afternoon of May 28, he was informed by Eddie Windham, the production supervisor, that he was being transferred to the first shift. Windham testified that Flowers was being transferred to first shift because he needed more supervision and that more management personnel worked on the first shift. The transfer was based on Flowers’s behavior on the second shift. Herb Jordan, Annie and Flowers’s immediate supervisor on the second shift, testified that he had counseled Flowers about his loud and boisterous behavior, his nonprofessional behavior, and his use of profanity. Jordan testified that on one occasion Flowers directed a profanity-laced outburst at Annie. Jordan also testified as to another occasion in which Flowers became loud and directed profanity toward him when he tried to get Flowers to corn- *1096 píete an accident report. Windham stated that he told Flowers to return to the plant the next morning to begin work on the first shift and that Flowers agreéd to do so.
After the discussion with Windham, and before the shooting, Flowers was seen in the break room by Robert Taylor, a Piknik employee. Taylor stated that Flowers was “talking and cutting up with” other Piknik employees. Taylor stated that Flowers had told him that he was going to start working the first shift; that he appreciated having a job at Piknik; and that Flowers asked him if he had seen Windham. Taylor stated that he saw Flowers leave the building and that he later saw Annie leave the building through another door.
Albert Love,- another employee at Pik-nik, testified that just minutes before the shooting occurred Flowers told him that “they had put him on first shift” and that he had “no hard feelings with no one.” Love stated that as he and Flowers talked, Annie walked passed and spoke and that they'spoke to her. He stated that Annie left the building at the main entrance and that Flowers headed toward the exit at the maintenance boiler room. Approximately five minutes later, Flowers shot Annie multiple times as she sat in her car in the Piknik parking lot.
This court has stated:
“It is [well] settled that a willful assault by a coemployee may be considered an accident compensable under the Alabama workers’ compensation statute. However, the fact of a willful assault alone does not conclusively establish that the assault arose out of the course of the employee’s employment. That conclusion must be drawn from the circumstances of the case. An assault that is based solely upon personal ill will, hatred, or anger does not arise out of and in the course of the employment. To justify workers’ compensation for injuries caused by an assault by a coem-ployee, the rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment, and not by some other agency.”
Beverly v. Ruth’s Chris Steak House, 682 So.2d 1360, 1362 (Ala.Civ.App.1996) (citations omitted).
Karen Hardt Branton, the personnel manager at Piknik, gave. a statement to the police indicating that the week preceding the shooting Annie had complained to her about “horseplay” on the second shift and had named Richard Flowers as a participant. Branton also testified in her deposition that Annie had complained to her about people leaving work early on one occasion to attend a party and complained that Jordan, the supervisor on the second shift, demonstrated partiality toward certain employees on that shift. Branton investigated the complaint and notified both Windham and Jordan that a complaint had been made. Jordan was asked to follow up on the complaint with the employees who allegedly left work early but not to use Annie’s name as the person who had made the complaint. In her statement to the police, Branton stated that on the day of the shooting she spoke with Annie and that Annie was upset because Branton had told “everybody in the plant about her complaint.” Branton testified in her affidavit that Annie was afraid to come to work.
Latrice Williams worked on the second shift with both Annie and Flowers. She testified in her affidavit that Flowers had had problems with Annie and that they had argued about work-related issues. She stated that sometimes Flowers would not like.the way Annie was doing her job or operating a machine and he would get *1097 upset with Annie. Williams testified that she knew Annie had made a complaint about Flowers and that she heard Flowers state on the day of the shooting that he was “going to get that bitch, Annie [Addy], Ms. Brown and Eddie Windham.”[3]
Detective Derrick Cunningham testified in his deposition that he had taken a statement from Flowers regarding the shooting in which Flowers told him that Annie had complained to management that he was “horseplaying,” “partying,” and “having fun” on the second shift rather than working. Detective Cunningham further stated in his deposition that Flowers had told him that he and Annie had had an argument and that he thought that was the reason he had been transferred to another shift.
It is undisputed that Flowers brutally murdered Annie as she sat helplessly in her automobile while on break at the Pik-nik plant. Annie and Flowers had argued about work-related issues, and Flowers had become upset with Annie. Annie had complained to management about Flowers’s conduct and Flowers knew that Annie had done so. Flowers stated that it was his belief that he was being transferred to the first shift because of an argument that he had had with Annie. Finally, on the day of the shooting Flowers had threatened to “get that bitch Annie [Addy].” After reviewing the record, we conclude that Annie’s dependents presented substantial evidence from which the rational mind could trace Annie’s shooting death to a cause set in motion by her employment.
Accordingly, the judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
CRAWLEY, J., concurs.
THOMPSON and MURDOCK, JJ., concur in the result.
PITTMAN, J., dissents.

. This case was originally assigned to another judge on this court; it was reassigned to Presiding Judge Yates on May 7, 2002.

. The evidence is disputed as to why Flowers had not been at work for several days preceding the shooting. Fleming testified that she had terminated Flowers from Teamwork Temporary for insubordination to his supervisor at Piknik and that Piknik had asked that Flowers not be sent back to work there. A note entered in the Teamwork Temporary files on Flowers indicates that he had been terminated, but allowed to return to work on a different shift. Karen Hardt Branton, the personnel manager at Piknik, stated in her affidavit that Flowers had been absent from work because of an injury he had suffered and a company holiday.

. This testimony is admissible under Rule 803(3), Ala. R. Evid., to show Flowers’s then existing stale of mind, such as intent, plan, or motive.