MOORE, Judge.
Lawler and Cole CPAs, LLC ("the employer"), and Alabama Retail Association d/b/a Alabama Retail Comp ("Alabama Retail") appeal from a judgment of the Marion Circuit Court ("the trial court") awarding workers' compensation benefits to Donald Cole ("Cole"), the surviving spouse of Linda Cole, who is deceased, under the Alabama Workers' Compensation Act ("the Act"), Ala. Code 1975, § 25-5-1 et seq. We affirm the trial court's judgment.
Procedural History
On October 5, 2016, Cole[1] filed a complaint against the employer and Alabama Retail,[2] asserting, among other things, that *313 Linda Cole ("the employee") had been employed by the employer, that the employee died while at her place of employment, that the employer maintained with Alabama Retail a workers' compensation and employer's liability-insurance policy, and that the employer and Alabama Retail had failed or refused to pay to Cole any workers' compensation benefits as a result of the employee's death. The complaint sought an award of workers' compensation benefits on behalf of Cole, the employee's surviving spouse and next of kin. The employer and Alabama Retail filed separate answers, each denying certain of Cole's claims and asserting a number of defenses.
On July 25, 2017, Cole filed a motion for a summary judgment, along with evidentiary submissions in support thereof. On September 25, 2017, the employer and Alabama Retail filed a joint motion for a summary judgment, along with evidentiary submissions in support thereof. The trial court entered an order on October 6, 2017, determining that the death of the employee "was a compensable accident under [the Act] because it arose out of her employment." On October 26, 2017, the trial court entered a summary judgment in favor of Cole and denied the summary-judgment motion filed by the employer and Alabama Retail. This appeal follows.
Facts
The parties on appeal agree that the facts regarding the circumstances of the death of the employee are undisputed. On February 20, 2016, the employee was on the employment premises performing her duties for the employer as an accountant when Jimmy Dale Cooper entered the premises for the express purpose of assaulting the employee and shot and killed the employee.
Cooper had been a long-time client of the employee, who had handled Cooper's individual and business taxes since at least the 1980s. At some point, Cooper's business underwent a sales-tax audit resulting in liability for unpaid sales taxes. Subsequently, the Alabama Department of Industrial Relations ("the Department") audited Cooper's business. During that audit, Cooper refused to comply with the lawful requests of the Department. The employee informed Cooper that she would not be able to provide him accounting services if he would not comply with the law; in response, Cooper had said he would find another accountant. In 2007 or 2008, Cooper collected copies of his paperwork and requested a final bill from the employer. The employee told Cooper that they were friends, that she did not want any hard feelings between them, and that Cooper did not owe anything to the employer. The audit apparently continued thereafter, ultimately resulting in fines and penalties being imposed against Cooper or his business for failing to properly classify certain workers as employees and for failing to pay appropriate withholding taxes.
The record contains no evidence indicating that the employee and Cooper had any further interaction. Approximately two years before the employee was killed, April Cagle, the employee's daughter who also worked for the employer as an accountant, had talked with Cooper over the telephone about an unrelated matter and *314 Cooper had not mentioned his tax problems. About a year before the employee's death, Donny Miller, Cooper's former business partner, warned Johnny Mack Lawler, the employee's business partner, that Cooper was upset with the employee and blamed her for his tax problems. In reference to Cooper, Miller told Lawler: "Y'all need to be careful."
On February 10, 2016, Cooper went to the office of a Hamilton attorney, Scott Hunt. Cooper held Hunt at gunpoint to coerce Hunt into telephoning Miller and requesting, under false pretenses, that he come down to Hunt's office. Hunt later informed Cagle that, while waiting for Miller to arrive at his office, Cooper had told Hunt "in detail everything that he was going to do and to whom and why" and that "the reason that [Cooper] was [going] after [the employee] was because he blamed her for his tax problems in the past." When Miller arrived at Hunt's office, Cooper appeared from a hiding place and shot Miller. Cooper then attempted to shoot Hunt, but his gun jammed. Cooper then apparently went to the office of the person who was performing his accounting services at that time with the intent to kill that accountant, but he was unable to gain access to that office.
Cooper thereafter entered the offices of the employer, gave a false name to the receptionist, and indicated that he wanted to see the employee for tax-accounting purposes. The employee was working on a client's income-tax return at the time. As the employee's client was leaving the employee's office, Cooper walked down the hall from the reception area into the employee's office. Once Cooper was in the employee's office, the employee attempted to contact the receptionist, and, shortly afterward, the employee left her office and started down the hall. Cagle heard Cooper say to the employee: "You have f***** my taxes up for the last time," and she heard the employee respond to Cooper, saying: "Jimmy, please don't do this" and "I will help you, we will do what we can to fix ... this mess, but I will help you." Cooper then shot the employee three times, resulting in the employee's death.
Both Cagle and Lawler testified in their depositions that they did not know of any other reason that Cooper would have had any personal ill will against the employee and that the employee had not had any interaction with Cooper between the end of the employer's services regarding his taxes in 2007 or 2008 and his return to the employer's offices in February 2016, when he shot the employee. Cagle testified that, approximately six months before the shootings, Cooper had spent six weeks in two different mental institutions, but no further evidence was presented regarding Cooper's mental health.
Issue
The employer and Alabama Retail contend that the death of the employee was not, as a matter of law, a compensable accident and that the trial court, therefore, erred by denying their motion for a summary judgment and by granting the motion for a summary judgment filed by Cole. The employer and Alabama Retail request this court to reverse the judgment of the trial court and to render a judgment denying Cole any death benefits.
Standard of Review
In workers' compensation cases, as in other civil cases, this court reviews a summary judgment de novo. See Stough ex rel. Stough v. B & B Pallet Repair, Inc., 778 So.2d 193 (Ala. Civ. App. 2000). A summary judgment is proper only when there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Meeks v. Thompson Tractor Co., 686 So.2d 1213, 1215 (Ala. Civ. App. 1996) ; Rule 56, Ala. R. Civ. P. In this *315 case, the parties to the appeal all agree that there is no genuine issue of material fact regarding the circumstances of the employee's death. The employer and Alabama Retail would be entitled to a summary judgment only if the death of the employee was not a compensable accident under applicable law.
Discussion
Death benefits may be awarded to the surviving spouse of an employee only when the death of the employee has been caused by an accident arising out of and in the course of the employment. See Ala. Code 1975, §§ 25-5-51 & 25-5-60. In this case, the employer and Alabama Retail argue that Cole's claim for death benefits should have been denied because, they say, the shooting death of the employee was not caused by an accident arising out of her employment.
Alabama law has long recognized that an unexpected willful assault upon an employee by another person constitutes an accident for purposes of the Act. See Garrett v. Gadsden Cooperage Co., 209 Ala. 223, 96 So. 188 (1923). Generally speaking, for the intentional assault upon an employee to be considered an accident arising out of the employment, "the rational mind must be able to trace the resultant [death] to a proximate cause set in motion by the employment, and not by some other agency." Beverly v. Ruth's Chris Steak House, 682 So.2d 1360, 1362 (Ala. Civ. App. 1996). In the context of workers' compensation cases, the employment may be the "proximate cause" of an accident even if the assault was not foreseeable as a natural and anticipated risk of the employment. See Garrett, supra ; Ex parte Terry, 211 Ala. 418, 100 So. 768 (1924).
The Alabama Legislature has enacted a special statute that further clarifies the scope of coverage for injuries and deaths resulting from intentional assault. Section 25-5-1(9), Ala. Code 1975, defines "injury" as "only injury by accident arising out of and in the course of the employment" and provides further, in pertinent part, that "[i]njury does not include an injury caused by the act of a third person ... intended to injure the employee because of reasons personal to him or her and not directed against him or her as an employee or because of his or her employment." The plain language of § 25-5-1(9) clearly and unambiguously provides that an intentional assault does not arise out of the employment if it is committed upon an employee because of reasons personal to the employee and not because of his or her status as an employee or because of his or her employment. See Ex parte Morris, 999 So.2d 932, 938 (Ala. 2008) (" ' "If a statute is not ambiguous or unclear, the courts are not authorized to indulge in conjecture as to the intent of the Legislature or to look to consequences of the interpretation of the law as written." ' " (quoting Gray v. Gray, 947 So.2d 1045, 1050 (Ala. 2006), quoting in turn Ex parte Presse, 554 So.2d 406, 411 (Ala. 1989) ) ).
In this case, the undisputed evidence shows that Cooper intentionally assaulted and killed the employee not out of any personal ill will, but solely because of their working relationship. Cooper apparently blamed the employee, as well as his former business partner, his accountant at the time of the shooting, and other professionals, for his tax problems and financial difficulties. While holding Hunt hostage, Cooper explained in detail to Hunt that he specifically planned to shoot the employee because he blamed her for his past tax problems. Immediately before opening fire on the employee, Cooper unmistakably expressed his intent to kill the employee because she had "f***** up [his] taxes." The employee responded that she would *316 help Cooper "fix this mess," plainly referring to the tax problems and not to some other unrelated matter. The record contains no evidence of any other possible motivation for the assault.
The employer and Alabama Retail point out that Cole presented no evidence indicating that the employee had actually caused any of Cooper's tax problems. Under § 25-5-1(9), the pertinent inquiry concerns whether the rational mind can trace the assault on the employee to her status as an employee or because of her employment as opposed to some personal characteristic of the employee, see Ex parte N.J.J., 9 So.3d 455 (Ala. 2008) (racially motivated rape occurring at employment premises held not compensable), or to some purely personal relationship. See Jacobs v. Bowden Elec. Co., 601 So.2d 1021 (Ala. Civ. App. 1992) (assault upon employee at work by emotionally disturbed nephew held not compensable). In this case, it is without question that Cooper directed his assault against the employee because she was his former accountant and she had been working as his accountant when the audits that led to his tax problems first occurred. Regardless of whether the employee actually contributed to any of Cooper's tax problems, it remains that Cooper assaulted and killed the employee because of her status as his former accountant and because of her employment.
We reject the contention that the assault should be considered as a purely personal attack because of the long passage of time since the professional relationship between Cooper and the employee ended. As the employer and Alabama Retail point out, the evidence indicates that Cooper and the employee amicably ended their accountant-client relationship following a disagreement over Cooper's refusal to follow tax laws and tax-audit requirements. Nearly a decade passed before Cooper stalked and killed the employee. Although the record is vague as to what transpired during that period, it is clear on the point that Cooper had not interacted with the employee at all and that Cooper had not developed any ill will or anger toward the employee for any reasons other than his perception that she had contributed to his tax problems and financial difficulties.
In Martin v. Sloss-Sheffield Steel & Iron Co., 216 Ala. 500, 113 So. 578 (1927), two employees quarreled over work-performance issues. After the argument ended, the two employees separated for a period. After the project ended, one of the employees went to an area of the employment premises to rest when he was verbally accosted and taunted into fighting by the other employee. The resting employee eventually picked up a piece of iron and struck the other employee in the head, killing him instantly. Our supreme court, applying the certiorari standard of review, affirmed the judgment of the trial court that had concluded that the original work-related argument had subsided and that the second confrontation had arisen from personal anger and resentment unrelated to the employment.
Notably, in Martin our supreme court did not hold that an employment-related dispute would be transformed into a purely personal dispute based solely on the passage of time, a proposition this court clearly rejected in Beverly v Ruth's Chris Steak House, supra, in which this court reversed a judgment denying compensation to an employee who was injured by a co-employee who he had confronted about stealing the employer's shrimp approximately 20 minutes earlier. In Beverly, this court distinguished Martin as follows:
"The facts of Martin in no way resemble the facts presented here. Although Flood and Beverly separated after their initial altercation, Flood attacked Beverly *317 within minutes of Beverly's return to his post in the kitchen, while Beverly was engaged in the performance of his duties. There is no evidence that Flood and Beverly renewed their quarrel, or that Beverly taunted Flood in any way, after Beverly returned from his break; the record reveals that the two men did not speak to one another again before Flood doused Beverly with the boiling water. Under the evidence presented here, we are unwilling to hold that a 20-minute interval between the initial quarrel and the attack, without more, was sufficient to transform the basis of Flood's resentment toward Beverly from anger at being thwarted in his thievery to a pure and personal ill will that was unrelated to Beverly's performance of his duties. Clearly, Beverly was attacked at his post in the kitchen as a result of his employment duties, i.e., because he successfully prevented the theft of the restaurant's food."
682 So.2d at 1363.
In this case, as in Beverly, no personal dispute arose between Cooper and the employee following the original work-related disagreement that had led to the end of their client-accountant relationship. Whatever anger and resentment Cooper had developed toward the employee over the years after the termination of that relationship, without evidence of some intervening circumstances,[3] cannot be characterized as purely personal ill will and animosity unrelated to their past working relationship, like the trial court found in Martin. Rather, the record very clearly shows that, over time, the tax problems and financial difficulties Cooper encountered eventually motivated him to harm those professionals, including the employee, who he blamed for those problems. The undisputed evidence indicates that, at all times, Cooper's grievance with the employee remained rooted in their working, not personal, relationship.
Because the trial court correctly concluded in this case that the death of the employee was caused by an accident arising out of the employment, we affirm the trial court's judgment awarding benefits to Cole.
AFFIRMED.
Thompson, P.J., and Pittman and Donaldson, JJ., concur.
Thomas, J., not sitting.

Cole filed his complaint both in his capacity as the personal representative of the estate of Linda Cole and as her dependent surviving spouse. However, the personal representative of the estate of a deceased employee does not have a claim for death benefits when the employee dies leaving a dependent surviving spouse. See, e.g., Johnson v. Huxford Pole & Timber Co., 983 So.2d 1133, 1138 (Ala. Civ. App. 2007). Accordingly, we deem the complaint to have been prosecuted by Cole solely as Linda Cole's dependent surviving spouse.

We note that the Act does not provide for the filing of a direct action against an insurer or a self-insurance fund under the circumstances of the present case, see § 25-5-8(f)(4), Ala. Code 1975, and Thomason v. Midland Ins. Co., 380 So.2d 902 (Ala. Civ. App. 1980) ; however, because none of the parties objected to the joinder of Alabama Retail as a defendant, the judgment was entered in the trial court against Alabama Retail without objection, and the parties have failed to raise the issue on appeal, the issue has been waived, and, accordingly, we consider Alabama Retail to be a proper appellant for purposes of the present appeal. See Gary v. Crouch, 923 So.2d 1130, 1136 (Ala. Civ. App. 2005) ("[T]his court is confined in its review to addressing the arguments raised by the parties in their briefs on appeal; arguments not raised by the parties are waived.").

We do not consider the vague reference to Cooper's having enrolled in a mental-health institution, without more, as substantial evidence of an intervening cause. The employer did not present any evidence indicating that Cooper had been diagnosed with any mental illness or that a mental illness had caused him to assault the employee six months after enrolling in a mental-health institution.